C. Yale, Jr., & Co. *v.* P. Hoopes—Seaman, Peck & Co., Intervenors.

A party intervening in an attachment suit and claiming a privilege on the property attached, is bound to see that his intervention is properly put at issue and brought to trial.

When no default is taken and no issue joined on the petition in intervention, the plaintiff may proceed to render his judgment by default against the defendant final, without the cause being fixed for trial.

The intervention falls with the decision of the main suit.

The proper mode of testing the rights of one claiming the vendor's privilege on property attached is not by way of intervention but by third opposition.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.

*Emerson & Huntington,* for plaintiffs.    *C. B. Singleton,* for intervenors and appellants.

Spofford, J.    The plaintiffs upon a money demand against *Hoopes,* a non-resident, attached certain merchandize, and brought suit praying for judgment against him, with the right of selling the property attached to pay their claim by preference.

*Seaman, Peck & Co.* intervened, and, alleging that they had sold the merchandize attached to the defendant on a credit, he having promised to furnish them collateral security, which he had failed to do, they prayed: 1st, that the sale from them to *Hoopes* be avoided, and the goods restored to them; and, 2d, that they be decreed to have the first privilege on the goods as vendors.

The counsel for plaintiffs accepted service of this petition in intervention and waived citation on the 28th April, 1855. On the 8th May, 1855, they took a judgment by default against their debtor *Hoopes,* who had been personally cited on the 25th April, which was duly confirmed (after proof of their demand) on the 15th May, and signed on the 19th May.

The intervenors never took any default against the plaintiffs, although they might have done so before the default was taken by plaintiffs against the defendant. There never was any issue joined on the demand in intervention with any party. Indeed, the intervenors seem to have slept over their claim for more than six months without having made any attempt to put it at issue, or to bring it to a trial.

It is only cases where issue is joined by answer filed that are required to be fixed for trial; C. P. 463. As there never was any issue joined in that mode here, the plaintiffs, who could not be retarded in their suit by intervention, had a right to proceed to the proof of their demand, and thus make the default against their debtor final.

With the decision of the main suit the intervention falls. As no issue was joined upon it, the question of the right of the intervenors to a vendor's privilege has not been passed upon. The proper mode of testing such a question is not by way of intervention but by third opposition. C. P. 395 *et seq.*

The cases of *Jones* v. *Lawrence,* 4 An. 279, and *Thompson, executor,* v. *Milne,* 4 An. 208, are decisions against the appellants. They have suffered no injury by the conduct of the appellees, who have not taken any advantage, and were not compelled to intervene.

Judgment affirmed.

Buchanan,, J., concurring.    I concur in the decree affirming the judgment,

dismissing the intervention and third opposition, because I am of opinion that the Article 394 of the Code of Practice does not mean that the Judge cannot proceed to try and determine the issue between plaintiff and defendant without also at the same time hearing and deciding the intervention; but simply that he is bound to do so if the parties require it, and if they have put themselves in a situation to try the intervention. The Article says "The Judge cannot refuse to admit an intervention, but he must pronounce on its merits at the same time that he decides the principal action."

I understand the last clause of this quotation to be a qualification of the first, in aid of the provision of Article 391 "one may intervene either before or after issue joined in the cause, *provided* the intervention do not retard the principal suit." The other construction of Article 394 (that the plaintiff cannot try his cause unless the intervention is tried at the same time), is inconsistent with Article 391, because the intervention might be filed after the principal cause was assigned for trial, and the defendant might neglect to join issue upon it, for the purpose of retarding the trial, or the plaintiff might be unprepared to do so; in either of which cases the cause would have to be continued. In the present case there was another very sufficient reason for dismissing the intervention. It prayed for two inconsistent remedies, the annulling of the sale and a preference, as vendor, upon the proceeds of the things attached; and was bad pleading.

Lastly, the intervenor has not been injured by the dismissal of his intervention. He may renew his suit for the annullment of the sale by a separate action, or, if he prefer to claim the privilege of vendor, he may renew his claim by motion, as well after judgment on the principal demand as before it. C. P. 401. In either case the appellant is secure, for he has the property attached in his own hands, having bonded it.

In conclusion, I would remark, that the appellant's plea is styled an "intervention and third opposition." Properly speaking, it is not an intervention but a third opposition; and a third opposition of both the classes mentioned in Article 396 of the Code of Practice. And neither class of third opposition, in contemplation of law, is to be heard and decided at the same time with the case of plaintiff, as against the defendant. The third opposition does not concern the person of the defendant but only the thing seized. It asserts either a *jus in re*, or a *jus ad rem*.

MERRICK, C. J., dissenting. This suit being for $700, was commenced by an attachment which was levied April 23d, 1855, on three boxes of merchandize marked in the name of the defendant, an absentee, directed to Port Gibson, Mississippi. Citation was served by posting on the door of the St. Louis Church and the door of the court-house, on the 25th day of April, also personally the same day.

On the 25th day of April, 1855, *Seaman, Peck & Co.* intervened in the suit, and claimed to be the vendors of the goods attached; and alleged that the defendant at the time of the purchase agreed to furnish certain collaterals in order to secure the payment of the price, and, that by reason of his non-compliance, intervenors have a right to annul said sale and to take back said goods. They pray that the goods be provisionally delivered to them, that said sale be annulled, or, if the court should be of the opinion that said sale ought not to be annulled, then that they be decreed to have the vendor's privilege upon the same for $1179 97, the price, and a preference over the plaintiff. A formal

order was made by the Judge allowing the intervention and service, which was accepted the same day by plaintiff's attorney, in these words :

"Service accepted and copy of petition and citation waived."
"New Orleans, April 28th, 1855.
  [Signed]    EMERSON & HUNTINGTON,
          *Attorneys for Yale, Jr., & Co.*"

The intervention and citation was also served on *R. W. Gurley*, curator *ad hoc*, and the Sheriff, on the 30th of the same month.

The same day, viz: the 30th of April, the intervenors took a rule upon the plaintiff to show cause why the merchandize should not be delivered to them upon their bond. Service of this rule was also accepted by the same attorneys. Counsel were heard on the rule on the first day of May, and it was continued and made absolute on the ninth day of May. On the second day of May the curator *ad hoc*, who had been appointed on the 30th of April, was first notified of his appointment.

In six days after the curator *ad hoc* was notified of his appointment, viz: May 8th, 1855, and eight days after the appointment on the minutes of the court and the service of the intervention, the plaintiffs took a judgment by default on showing that the defendant had failed to answer. This default was made final, not only against the defendant but also against *Hoopes & Co.*, on the fifteenth day of May, 1855, on the proof of the plaintiff's demand, *and without setting the case for trial.*

The intervenors do not appear to have had any knowledge of the default taken against the defendant on the 8th of May, for the judgment on the rule was pronounced in their favor on the 9th, and the property was bonded for by them on the 14th day of the same month. The judgment by default having been made final on the fifteenth, the day after the property was bonded under the rule, was signed on the 19th of May.

The same day the judgment was signed, the plaintiffs again appear by counsel and represent to the court that the defendant resides out of the State and *has no known agent here*, and move the appointment of *Samuel T. Meyers*, curator *ad hoc*, to represent defendant, which was done.

Thereupon, notice of judgment was served on the new *curator ad hoc* on the 22d day of May.

Execution issued on this judgment on the 9th day of June, and was returned no property found on the 23d day of July. An *alias fi. fa.* was issued in November, which was returned in like manner in December, 1855.

On the 12th day of January, 1856, the plaintiffs filed their exceptions and answer to the intervention and third opposition for the first time. They except to the intervention and third opposition, and pray that the same may be dismissed, because final judgment has been rendered and the intervenors have taken no steps to bring their claim to trial.

The answer, in the event the exception should be overruled, was a general denial.

On the 18th day of January the plaintiffs filed a supplemental petition, issued a *fi. fa.*, and propounded interrogatories to *John Wall & Co.*, as debtors of the defendant.

On the 19th of February, 1856, they filed a similar proceeding against *Curry & Person.*

On the 23d of February, 1856, on motion of plaintiffs counsel *another curator ad hoc (J. B. Eustis) was appointed* for these proceedings, of which notice was given on the 25th.

After sundry continuances, the intervention or opposition came up for trial in November, 1856, when the exception filed on the 12th day of February, 1856, was sustained and the intervention dismissed. The intervenors have appealed.

From this statement of the case it appears that at the time the default was taken by the plaintiff against the defendant it was not possible for the intervenors to do more than they had done. Service of their petition had been accepted by the plaintiff, and citation waived.

They had caused their petition to be served on the Sheriff and on the curator *ad hoc*, and the delay for answering had not elapsed.

It is true, they might have taken a judgment by default against the plaintiff on the demand in intervention by the fifteenth of May, but it does not appear that the judicial days for making it final would have elapsed, and no answer was filed by the curator *ad hoc.*

As the summer months intervened and the courts adjourned shortly after the order of the Judge decreeing the delivery of the property to the intervenors, and as the plaintiffs wholly neglected to answer the intervention, no laches, in my opinion, are imputable to the intervenors. It was the duty of the plaintiffs to answer the demand in intervention and third opposition, the service of which they had acknowledged. They were themselves in fault for not answering, and the intervenor was no more bound to take judgment by default against the plaintiff than the plaintiff is in any other case bound to take a default against the defendant. See *May* v. *Ball*, 12 An., just decided. The mandate of the citation in both cases (to the defendant to the original petition and intervention) is to comply with the demand contained in the petition, or deliver the answer to the petition in the office of the clerk of the court. C. P. 393, 179.

How, therefore, can a party who has disobeyed the injunction of the court complain of the opposite party for not having had him adjudged to be in default? His complaint amounts to this : It is true it was my duty to answer your demand in intervention, for I have been so ordered by the court, but as you have had the good nature to wait on me when you might have had me declared to be in default, now, therefore, you are greatly in the wrong yourself, and it is the duty of the court to dismiss your demand for your negligence.

When the intervention is once allowed by the Judge and served, it forms, in my opinion, a part of the suit, which can only be got rid of by the plaintiff by some action of the court, either on an exception or motion to strike out. If the intervenors cross swords with the plaintiff by demanding anything in their petition of intervention adverse to the plaintiffs' demand, or if they oppose anything in the plaintiffs' petition, as they do in this case, the intervention and opposition becomes so far an answer, and presents an issue for trial which the intervenors are entitled under all circumstances to have assigned for trial.

From the time the intervention is served upon the plaintiff he is as much bound, as I think, to take notice of it as he is of the defendant's answer, and he must regard the intervenors as parties to the suit having rights as such. He must prepare himself to meet the intervention and do what is required to be done on his part, viz : file his answer.

As in the case of an answer the plaintiff cannot obtain judgment against the defendant, without setting the cause down for trial, so on the intervention ; the cause must be put at issue and set for trial, for the Judge is peremptorily required to pronounce on the merits of the intervertion at the same time he does the original demand.  C. P. 394.  An injunction which appears to have been wholly disregarded in the present case.

It is not made the duty of the intervenor to force the other parties to trial, nor is he in general less favored than other suitors.  For the proceeding by intervention is one well calculated to avoid circuity and multiplicity of actions, which the law abhors, and to prevent the collusive and fraudulent use of the forms of judicial proceedings.

There are only two things which require greater diligence on the part of the intervenors than on the part of other suitors, they are prescribed by Article 391 C. P. : 1st, He must always be ready to plead ; 2d, He must be ready to exhibit his testimony.  But even in these respects the Code of Practice is so construed as to give the intervenor time to cite the parties, and a reasonable delay to procure the testimony.  16 L. R. 268.

But it is said that the cases of *Thompson* v. *Milne*, 4 An. 208, and *Jones* v. *Lawrence*, ibid 279, are decisive of the case at bar.  They do not appear to me to sustain the view for which they were cited.  In the first case it appears that the plaintiffs had done their duty and *answered* the intervention, and were not in default, and it was held that the intervenors were bound to take notice of an order made in open court.  The plaintiffs were appellees, and the cause was remanded for a new trial at their instance.

In the case of *Jones* v. *Lawrence* it is stated that the intervenors employed the defendant's counsel.  *That on the trial of the cause* they (the counsel) absented themselves from the court-house, and not being found in the court-house buildings the plaintiff proved his claim and submitted the case.  Afterwards, when the intervenors attempted to annex a supplemental petition to their former one and so proceed upon both, their proceedings were very properly dismissed.

In the case of *Durocher* v. *her husband*, the intervenors expressly consented that the principal action should be first tried and the court say :  "The waiver by the intervenors of their right to oppose the progress of the cause, and their consent that it should proceed to judgment, was equivalent to a withdrawal of the intervention.  The Judge, under the express renunciation by the intervenors of their right to be heard, *was dispensed from pronouncing upon their intervention at the only time when legally he could have pronounced upon it, to wit : when declaring upon the principal action.*"  3 An. 332.  The fair inference is, that had it not been for the consent of the intervenors the Judge, in obedience to Article 394, would have been obliged to pass upon the intervention when he decided the principal action, and his failure so to do would have been error.

Holding these views, I am unable to concur in the decree in this case which seems to me to destroy the usefulness of the intervention, and open the door to surprises.

In my opinion, the Judgment of the District court ought to be reversed, and the cause remanded for further proceedings.

Mr. Justice COLE concurs in this opinion.